FERMINA ISABEL ANAUD DE BLANCO, Plaintiff and Appellant, v. JOSÉ MARTÍNEZ ET AL., Defendants and Appellants.

No. 4481.   Argued May 24, 1929.—Decided February 28, 1930.

*M. Tous Soto* and *Samuel R. Quiñones*, for plaintiff and appellant.
*A. R. de Jesús*, for defendants and appellants.

Mr. Justice Hutchison delivered the opinion of the court.

In April, 1921, Ramón Portela borrowed two thousand dollars from Doña Josefa Umpierre, and executed a mortgage on a house and lot in Santurce, to secure the payment of that amount with interest thereon at the rate of one per cent a month. Costs and attorneys' fees were not mentioned in this instrument.

In May, 1923, Doña Josefa assigned this mortgage to José Martínez González. At the same time the term of the mortgage was extended to May 30, 1925. Ramón Portela was a party to the instrument which contained the following clause: "an additional sum of two hundred dollars is fixed for costs and attorneys' fees, the mortgage being increased to that extent."

On the same day Ramón Portela leased the mortgaged property to José Martínez for a term of two years to expire on May 7, 1925, at a monthly rental of thirty dollars.

Later Ramón Portela sold the property to Doña Fermina Isabel Anaud a resident of Spain, and thereafter as her agent and attorney in fact, he continued to collect the monthly rental and to pay the interest on the mortgage at the agreed rate of one per cent, or twenty dollars a month. Each month Martínez paid $10, the difference between the monthly instalment of interest and the monthly rental, signed a receipt for the twenty dollars thus received by him as interest on the mortgage, and took a receipt for the thirty dollars due as rent. With a single exception hereinafter mentioned, the re-

ceipts for rent were signed by Ramón Portela as agent and attorney in fact of Doña Fermina Isabel Anaud.

On May 15, 1925, Doña Fermina Isabel Anaud, through her agent and attorney in fact, Ramón Portela, notified José Martínez in writing that the lease had expired, and requested that possession of the premises be surrendered as soon as possible.

At the end of the month José Martínez declined to accept a receipt for rent signed "Fermina Isabel Anaud, by María Luisa Blanco Anaud," until Rafael Portela a brother and partner of Ramón, had indorsed thereon a statement that the amount named therein had been collected by him. José Martínez then took the receipt and signed another for the instalment of interest due on the mortgage for the month of May.

On June 2, José Martínez was requested by a notary to call at his office June 23, in order to receive two thousand dollars, the principal due on the mortgage, and to sign an instrument of cancellation and discharge.

On June 3, Martínez filed a petition for the summary foreclosure of the mortgage. The prayer was for a writ demanding payment of two thousand dollars as principal, twenty-five dollars as interest due on May 30, and two hundred dollars as indemnity for costs, disbursements and attorneys' fees. The writ issued June 6, and was served June 20. This service was made on María Luisa Blanco, at number 34 Luna Street, San Juan, as the person in charge of the mortgaged property in Santurce.

María Luisa Blanco was the wife of Ramón Portela, and daughter of Fermina Isabel Anaud. She was not the authorized agent or representative of either her mother or her husband. Nor was she in charge of the mortgaged property.

A writing dated June 25, and filed June 26, recites that on June 6, a demand had been made on the defendant, Fermina Anaud, for the payment of two thousand dollars, the amount of the mortgage, and that she had tendered this amount to plaintiff who had refused to receive it. This writing was signed "Fermina Isabel Anaud, by Rafael Portela",

and was accompanied by a deposit of two thousand dollars to the order of José Martínez. It closes with a prayer that the deposit be adjudged to have been properly made and that petitioner be required to execute an instrument of cancellation and discharge, and to pay the costs. Plaintiff indicated his willingness to accept the two thousand dollars as a partial payment on the total amount of his claim of two thousand two hundred and twenty-five dollars and moved for an order authorizing the issuance of a check for the amount of the deposit.

On August 19, the district judge directed the secretary to issue a check payable to the order of José Martínez for the amount of the deposit to be credited on his claim for two thousand two hundred twenty-five dollars.

On July 21, petitioner moved for an order directing the sale of the mortgaged property for the payment of the interest from May 1 to May 30, and of the two hundred dollars indemnity for costs, disbursements and attorneys' fees. The next day the court ordered the sale, and the property was sold on August 18.

Petitioner was the only bidder, and the property was awarded to him at twelve hundred dollars. He was credited with two hundred twenty-five dollars of this amount in satisfaction of his claim for accrued interest and the item of two hundred dollars to cover costs, disbursements and attorneys' fees. He paid the balance of nine hundred twenty-five dollars in cash.

The marshal's deed was executed on October 10, and on the same day José Martínez conveyed the property to Eladio Yenderrozo.

Doña Fermina Isabel Anaud then brought an action against Martínez to have the summary foreclosure proceeding adjudged null and void. Later, by supplemental complaint, Yenderrozo was made a party defendant. On November 14, the registrar of property declined to make a permanent record of a notice of *lis pendens,* but entered a caveat

for one hundred and twenty days. On November 21, Yenderrozo conveyed the property in question to Ignacio Cabo Rodríguez, who was then brought in by another supplemental complaint.

The court below held the summary foreclosure proceeding to be null and void, and more specifically adjudged to be without force and effect:

1. The writ requiring defendant to pay, and the order for the sale of the mortgaged property.

2. The writ issued to the marshal commanding him to carry out the said order of sale and everything done thereunder by the marshal, including the public sale and the award made of the mortgaged property.

3. The marshal's deed of conveyance to José Martínez González. And

4. The simulated transfer of the property by Martínez to Yenderrozo.

It ordered the cancellation in the registry of the record of the marshal's deed to Martínez González and of any record that might have been made of the conveyance by Martínez to Yenderrozo.

Ignacio Cabo Rodríguez was held to be a purchaser in good faith, and an innocent third person as to the matters alleged in the amended and supplemental complaints.

The final pronouncement suggests that the resulting situation as to him should be governed by section 370 of the Civil Code.

Both parties appeal.

Defendants now say that the defect in service of the demand for payment was cured by the voluntary appearance of defendant when she deposited the two thousand dollars.

The remedy elected by Martínez "was a summary, special and *ex parte* proceeding and the provisions of the Mortgage Law and its Regulation should have been strictly observed." *Arvelo et al.* v. *Banco Territorial y Agrícola,* 25 P.R.R. 677, 691.

It may be conceded that the so-called appearance of the defendant in that proceeding, had it been entered by an attorney-at-law in an ordinary action, would have amounted to a general appearance. Whether or not the same rule should apply in a summary proceeding is at least, a debatable question.

Rafael Portela was not an attorney-at-law. There was no presumption of agency. He was not authorized by defendant to enter a general appearance on her behalf.

It may be that any stranger to a summary foreclosure proceeding may deposit the amount actually owed by the defendant therein and call the attention of the court to the fact that such deposit has been made. It does not follow that he may assume the role of attorney and by a prayer for affirmative relief confer upon the court jurisdiction over the person of the defendant.

We can not concur in the view of appellants that the want of jurisdiction was supplied by the paper filed by Rafael Portela at the time of making the deposit.

Nor do we mean to imply by anything said in the preceding paragraphs that the defective service of a demand for payment can be cured by defendants' appearance either general or especial.

The claim for interest from May 1 to May 30, for which the mortgagee had signed a receipt, was a deliberate misrepresentation and a fraud and imposition on the court. The order of sale was founded on that false and fraudulent claim, and must be adjudged null and void.

The $200 dollars designated by the parties and included in the mortgage was a maximum intended to cover costs and attorneys' fees when fixed and allowed by the court, not a liquidated amount nor a penalty. *Vidal* v. *District Court,* 40 P.R.R. 100.

The whole proceeding was an absolute nullity.

Defendants-appellants rely upon *Paniagua* v. *District Court,* 34 P.R.R. 648; 25 Cyc. 1452, and 17 R.C.L. 1028, 1036,

in connection with articles 27 and 34 of the Mortgage Law, in support of the theory that Cabo Rodríguez was an innocent purchaser and was not bound by the notice of *lis pendens*.

Articles 27, 33, and 34, in so far as pertinent, read as follows:

"Art. 27. For the purposes of this law, a third person shall be considered one who has not been a party of the recorded instrument or contract.

"Art. 33. Instruments or contracts which are null under the law are not validated by their admission to record.

"Art. 34. Notwithstanding the provisions of the foregoing article, instruments or contracts executed or entered into by a person who, according to the registry, has a right to do so, shall not be invalidated with regard to third persons after they have been recorded, even though the interest of such party should subsequently be annulled or terminated by virtue of a prior deed which was not recorded or for reasons which do not clearly appear from said registry."

The words last quoted refer to matters of fact, not to matters of law. A third person is presumed to know the law.

". . . In other words, if the registry gives notice of a state of facts that renders the title invalid or subject to question in law, the purchaser who relies upon the record takes his title subject to whatever consequences may flow in law from the facts thus notified." *Ochoa* v. *Hernández,* 230 U. S. 139, 164. See also 2 Morell, *Legislación Hipotecaria,* pages 617, 619 and 620.

The exceptional circumstances in which a mortgagor is permitted to challenge any averment contained in the initial pleading in the summary foreclosure proceeding are enumerated in article 175 of the Regulations as follows:

"1. When documentary evidence is produced of criminal proceedings charging the forgery of the mortgage deed the subject of the proceedings, in which a complaint shall have been admitted or an order of prosecution has been issued.

"2. When an action in intervention of ownership is filed, necessarily the title of the ownership of the estate in question recorded

in favor of the intervener under a date prior to the record of the claim of the execution creditor and not canceled in the registry being necessarily filed therewith.

"3. When a certificate from the registrar is presented to the effect that the mortgage under which the proceedings are being prosecuted has been canceled, or an authentic copy of the public instrument of the cancellation of the same, bearing a memorandum of its presentation in any of the registries where it is to be noted. executed by the plaintiff or by his predecessors or successors in interest, the transfer in a proper case being also proved by documentary evidence."

It is further expressly provided in the same article that:

"All other claims that may be brought, either by the debtor or by third persons in possession and other persons interested, including those involving the nullity of the title or of the proceedings, or the maturity, truth, extinction or amount of the debt, shall be heard in the proper plenary action, without ever producing the effect of suspending or interfering with the execution proceedings."

Except in the three negligible instances specified in article 175, the hands of the mortgage debtor are tied. He has no opportunity to be heard. He must meet the demand for payment in full within thirty days or suffer his property to be sold. The proceeding is purely *ex parte*. This has been held so frequently in this jurisdiction, and in the earlier Louisiana cases, that authorities need not be cited.

In the instant case there is no question of "a prior deed which was not recorded". Plaintiff was the record owner of the mortgaged property up to the time when the marshal's deed of conveyance to Martínez was recorded. Plaintiff was not divested of her title by that deed, nor by the summary. *ex parte* proceeding which preceded the execution thereof.

That the property had been awarded to Martínez as the sole bidder and purchaser, that he was the mortgage creditor in a summary foreclosure proceeding, and that the property had been conveyed by Martínez to Yenderrozo, the vendor of Cabo Rodríguez, are facts which clearly appeared. from the registry. Rodríguez was thereby charged with notice that Martínez's title and therefore his own, depended on the

validity of the foreclosure proceeding. He knew that if the foreclosure proceeding was void, Martínez had nothing to convey to Yenderrozo and Yenderrozo could not sell what he did not own. Aside from any question of *lis pendens*, or of constructive notice thereof, Rodríguez accepted the deed from Yenderrozo, as Yenderrozo accepted the deed from Martínez and as Martínez accepted the deed from the marshal, subject to the right of the mortgage debtor to attack the summary foreclosure proceeding by bringing the plenary action referred to in article 175, *supra*, and subject to the result of such action.

To hold otherwise would take from the mortgage debtor his only remedy for any wrong that may be done by a mortgage creditor under cover of the summary foreclosure proceeding, rob him of his day in court such as it is, and render the summary foreclosure proceeding unconstitutional. *Giménez* v. *Brenes*, 10 P.R.R. 124; *Bianchi* v. *Morales*, 262 U. S. 170.

It follows that Cabo Rodríguez was not, in the eye of the law an innocent third person, or purchaser in good faith, and section 370 of the Civil Code has nothing to do with the case.

The judgment appealed from will be reversed in part, and after the rendering of our judgment in lieu of the part so reversed, in all other respects, affirmed.